IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BARTHOLOMEW ANTONIO GUZMAN,           §
TDCJ #1399983,                        §
                                      §
            Petitioner,               §
                                      §
v.                                    §
                                      §     CIVIL ACTION NO. H-17-0596
LORIE DAVIS, Director,                §
Texas Department of Criminal          §
Justice - Correctional                §
Institutions Division,                §
                                      §
            Respondent.               §

## MEMORANDUM OPINION AND ORDER

Bartholomew Antonio Guzman has filed a Petition for a Writ of
Habeas Corpus By a Person in State Custody ("Petition") (Docket
Entry No. 1) seeking relief under 28 U.S.C. § 2254 from a convic-
tion for causing serious bodily injury to a child.  Pending before
the court are Respondent's Motion for Summary Judgment with Brief
in Support ("Respondent's MSJ") (Docket Entry No. 12) and
Petitioner's Motion in Opposition to Summary Judgment with Brief in
Support ("Petitioner's Opposition") (Docket Entry No. 22).  After
considering the pleadings, the state court record, and the
applicable law, the court will grant Respondent's MSJ and will
dismiss this action for the reasons explained below.

## I. Background

Guzman was charged in Harris County case number 1053411 with causing serious bodily injury to a 17-month old child ("E.A.").[1] The indictment was enhanced for purposes of punishment with allegations that Guzman had at least two prior felony convictions.[2] At trial the State presented evidence from a pediatric specialist (Dr. Len Tanaka) and a pediatric ophthalmologist (Dr. Helen Mintz-Hittner) who examined E.A. and determined that the little girl suffered severe brain damage and retinal hemorrhaging consistent with being violently shaken, a condition known as "Shaken Baby Syndrome," after she was left in Guzman's care.[3] A jury in the 262nd District Court of Harris County, Texas, found Guzman guilty as charged and sentenced him to 90 years' imprisonment.[4]

On direct appeal Guzman argued that the evidence was factually insufficient to support his conviction.[5] An intermediate court of appeals rejected that argument after summarizing the evidence presented at trial, as follows:

---

[1]Indictment, Docket Entry No. 13-3, p. 18. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]Id.

[3]Court Reporter's Record of Trial, vol. 4, Docket Entry No. 13-14, pp. 91-100, 112-16.

[4]Judgment of Conviction by Jury, Docket Entry No. 13-4, p. 41.

[5]Appellant's Brief, Docket Entry No. 13-1, p. 11.

E.A. was 17 months old when she was left at home in appellant's care. E.A.'s mother, Susan Bravo, had taken one of appellant's children and one of her own ice-skating, leaving E.A. and appellant's 18-month-old daughter with appellant. Unhappy that she was not allowed to go ice-skating, E.A. cried when Bravo and the others left. E.A. could walk, talk, breathe, eat, and play like other normal toddlers when Bravo left. When Bravo returned home around 10:00 p.m., appellant informed Bravo that E.A. was sleeping, but had fallen in the tub earlier in the night. Appellant took E.A. out of her room and brought her to the room that he shared with Bravo. Bravo noticed a red mark on E.A.'s head and noted that E.A. was "snoring heavily." Bravo did not try to wake E.A. Bravo then showered, and appellant returned E.A. to her room. Bravo considered appellant's behavior in taking E.A. out of her room while she was sleeping unusual because he had never done that before. Appellant also professed his love to Bravo for the first time that night.

Before leaving for work the next morning, appellant asked Bravo if she had checked on the children during the night. He also called 20 minutes after leaving to ask about E.A. Bravo stated that E.A. was not yet awake, but that she would probably take her to the doctor because of the fall in the bathtub the previous night. Appellant told Bravo not to take E.A. to the doctor because Child Protective Services would become involved. Appellant called again about 40 minutes later and asked about E.A. Around that time, E.A.'s older sister, J.A., tried to wake E.A., but was unable to do so. After trying to arouse E.A. several times, J.A. saw E.A. having what may have been a seizure. A short time later, Bravo called 9-1-1.

The paramedics could not get E.A. to respond to verbal stimuli. The paramedics noted multiple injuries, includ-ing those to E.A.'s forehead, right foot, back, and buttocks. After examining E.A., Dr. Len Tanaka diagnosed her with left subdural hemorrhage, or bleeding on the left side of the brain. Dr. Tanaka concluded that, in addition to the injuries noted by the paramedics, E.A. had bruising to her neck, her pelvic region, her perineal, and her genitals and had suffered permanent brain injuries caused by severe and forceful shaking. As a result, E.A. now requires artificial help to breathe and to eat. Dr. Tanaka testified that E.A. would have

shown the effects of being violently shaken immediately. Dr. Tanaka's diagnosis was further confirmed by Dr. Helen Hittner, a pediatric ophthalmologist, who testified that E.A. suffered retinal hemorrhaging that was caused by a violent back and forth motion, or intentional shaking.

While in jail, appellant sent multiple letters to Bravo in which he professed his love and his intent to marry her. Appellant repeatedly asked Bravo to give him another chance and to forgive him. He wrote, "I ask God everyday to let you forgive me." Appellant never indicated for what he sought forgiveness.

Guzman v. State, No. 01-06-00946-CR, 2008 WL 340001, at *1-2 (Tex. App. — Houston [1st Dist.] Feb. 7, 2008). Subsequently, the Texas Court of Criminal Appeals refused Guzman's petition for discretionary review of his factual insufficiency claim. See Guzman v. State, No. PD-0262-08 (Tex. Crim. App. Sept. 10, 2008).

In his pending Petition Guzman contends that he is entitled to relief from his conviction for the following reasons:

1. The prosecution withheld exculpatory evidence in violation of Brady v. Maryland, 83 S. Ct. 1194 (1963).

2. The prosecution engaged in misconduct by failing to inform the jury that E.A.'s injuries could have been caused by an accidental fall.

3. He was denied effective assistance of counsel because his trial attorney -

   (a) failed to confer with him or speak to his family members;

   (b) failed to investigate E.A.'s history of epilepsy and other falls that could have explained her injuries;

   (c) failed to interview witnesses;

-4-

> (d)    failed to request funds to hire a forensic pathologist to controvert the State's medical experts; and
>
> (e)    failed to present evidence in the form of letters from Daniel's elementary school teachers about his "irrational and sometimes violent behavior towards the other children."

>4.    He was denied due process when the state court of appeals used flawed reasoning to reject his challenge to the sufficiency of the evidence.[6]

With the exception of Claims 3(a) and 3(c), these grounds for relief were raised by Guzman in an Application for a State Writ of Habeas Corpus Under Article 11.07 of the Texas Code of Criminal Procedure ("State Habeas Application"),[7] and rejected by the Texas Court of Appeals without a written order based on findings made by the trial court following an evidentiary hearing.[8] The respondent moves for summary judgment, arguing that Guzman is not entitled to relief because Claims 3(a) and 3(c) are procedurally barred, and his remaining claims lack merit under the governing federal habeas corpus standard of review.

---

[6]Petition, Docket Entry No. 1, pp. 6-11.

[7]State Habeas Application, Exhibit A to Respondent's MSJ, Docket Entry No. 12-2, pp. 7-17. <u>See also</u> Applicant Guzman's Separate Memorandum of Law in Support of His State Habeas Corpus Application, Docket Entry No. 17-17, pp. 25-42.

[8]<u>See</u> Action Taken on Writ No. 75,864-03 (Tex. Crim. App. Feb. 1, 2017), Docket Entry No. 15-16, p. 1; State's Proposed Findings of Fact, Conclusions of Law and Order After Remand dated May 15, 2014, Exhibit E to Respondent's MSJ, Docket Entry No. 12-6, pp. 1-5; State's Proposed Findings of Fact, Conclusions of Law and Order After Remand dated Sept. 24, 2015 ("Supplemental Findings and Conclusions"), Exhibit F to Respondent's MSJ, Docket Entry No. 12-7, pp. 1-14.

## II. <u>Standard of Review</u>

To the extent that the petitioner's claims were adjudicated on the merits in state court, his claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." <u>Matamoros v. Stephens</u>, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376 (2015) (quoting <u>White v. Woodall</u>, 134 S. Ct.

1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)).

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. See Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005);

Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

## III. Discussion

### A. Suppression of Evidence

In his first ground for relief Guzman claims that the prosecution violated his right to due process under Brady v. Maryland, 83 S. Ct. 1194 (1963), by suppressing exculpatory or impeachment evidence. He apparently references statements that were part of a Child Protective Services Investigation Report (the "CPS Report") (Docket Entry No. 17-17), which were the subject of his claim on state habeas review.[9] He argues that the CPS Report contained statements showing that E.A.'s mother, Susan Bravo, lacked credibility and that investigators concluded that he had not engaged in any wrongdoing.[10]

---

[9]State Habeas Application, Exhibit A to Respondent's MSJ, Docket Entry No. 12-2, p. 7.

[10]Petitioner's Opposition, Docket Entry No. 22, pp. 16-19.

In <u>Brady</u> the Supreme Court held that the government violates due process when it fails to disclose evidence favorable to the accused if such evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 83 S. Ct. at 1196-97. The government's duty to disclose extends to both impeachment and exculpatory evidence. <u>See United States v. Bagley</u>, 105 S. Ct. 3375, 3380 (1985). To establish a <u>Brady</u> violation a defendant must prove that: (1) evidence was withheld or suppressed by the prosecutor, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that prejudice ensued. <u>See Strickler v. Greene</u>, 119 S. Ct. 1936, 1948 (1999). Evidence is material under <u>Brady</u> "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Bagley</u>, 105 S. Ct. at 3383.

The CPS Report is in the state court record,[11] along with an assortment of other documents from CPS and the Texas Department of Family and Protective Services. According to the CPS Report, investigators concluded that E.A. sustained "extreme physical abuse" that was not consistent with a fall and was inflicted either

---

[11]CPS Report, Docket Entry No. 17-17, pp. 79-96.

by Susan Bravo or Guzman.[12] Investigators noted that Guzman's own children, Daniel and Milagro, disclosed no abuse or neglect, and it could not be determined whether they had been abused.[13]

Guzman does not point with particularity to any part of the CPS Report that he claims is exculpatory or beneficial in terms of impeachment value. More importantly, Guzman has not shown that the CPS Report was suppressed. Defense counsel testified at the hearing on Guzman's State Habeas Application that he saw the CPS Report when he reviewed the prosecutor's file, which was made available to him before trial.[14] Defense counsel used his notes from reviewing the CPS Report at trial to cross-examine E.A.'s mother about untrue statements that she made to CPS during the investigation.[15] The record confirms that defense counsel had reviewed a copy of the CPS Report because he cross-examined E.A.'s mother about the statements she gave to CPS investigators.[16] Defense counsel also referred to the CPS Report when cross-examining CPS Investigator Juan Barnel, who admitted that the

---

[12]Id. at 96.

[13]Id.

[14]Court Reporter's Record of Writ Hearing, vol. 2, Docket Entry No. 16-16, p. 28; Court Reporter's Record of Writ Hearing, vol. 3, Docket Entry No. 16-17, p. 41.

[15]Court Reporter's Record of Writ Hearing, vol. 5, Docket Entry No. 16-19, pp. 6-12, 21.

[16]Court Reporter's Record of Trial, vol. 4, Docket Entry No. 13-14, pp. 79-80; Court Reporter's Record of Trial, vol. 5, Docket Entry No. 13-15, pp. 7-10, 13, 26-27.

investigation did not disclose evidence that Guzman's own children had been abused.[17]

The state habeas corpus court found that defense counsel's testimony at the evidentiary hearing was "true and credible."[18] The Fifth Circuit has emphasized that "[a] trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." Pippin v. Dretke, 434 F.3d 782, 792 (5th Cir. 2005) (citations omitted). Guzman makes no effort to challenge any of the fact findings or credibility determinations made by the state habeas corpus court, and he does not otherwise show that the prosecution suppressed the CPS Report. See, e.g., United States v. Agurs, 96 S. Ct. 2392, 2397 (1976) (Clarifying that the Brady rule applies to information that was "known to the prosecution but unknown to the defense" during trial.); United States v. Brown, 650 F.3d 581, 588 (5th Cir. 2011) (Evidence is not suppressed "'if the defendant knows or should know of the essential facts that would enable him to take advantage of it.'"). Based on this record, Guzman has failed to show that the state habeas corpus court contravened Brady by summarily denying relief on this claim. Accordingly, the respondent is entitled to summary judgment on this claim.

---

[17]Court Reporter's Record of Trial, vol. 5, Docket Entry No. 13-15, pp. 56-62.

[18]Supplemental Findings and Conclusions, Exhibit F to Respondent's MSJ, Docket Entry No. 12-7, p. 4.

**B.   Prosecutorial Misconduct**

Guzman argues that the prosecutor engaged in misconduct by failing to tell the jury that E.A.'s injuries could have been caused by an accidental fall in the bathtub or down the stairs.[19] The state habeas corpus court summarily rejected this claim, and the respondent argues that it is without merit because there was no evidence that E.A.'s injuries were caused by a fall.[20] The respondent points to the trial testimony of the State's experts, Dr. Tanaka and Dr. Mintz-Hittner, who also provided affidavits during the state habeas corpus proceeding.[21] Both of these experts, who are pediatric specialists, examined E.A. and determined that she sustained severe brain damage and retinal hemorrhaging that was consistent with being violently shaken back and forth in an intentional manner.[22] In other words, E.A.'s injuries were consistent with Shaken Baby Syndrome.[23] Both experts testified at trial that her injuries were not consistent with an accidental fall

---

[19]Petition, Docket Entry No. 1, pp. 14-15.

[20]Respondent's MSJ, Docket Entry No. 12, p. 17.

[21]Id.; see also Affidavit of Helen Mintz-Hittner, M.D., Docket Entry No. 12-3, pp. 2-4; Affidavit of Len Tanaka, M.D., Docket Entry No. 12-4, pp. 2-4.

[22]Court Reporter's Record of Trial, vol. 4, Docket Entry No. 13-14, pp. 91-100, 112-16.

[23]Id. at 95-96, 111, 115-16.

in the bathtub or a fall down the stairs of the sort described by Guzman.[24]

Guzman takes issue with the "one-sided presentation" of this evidence to the jury and accuses the prosecutor of improperly disregarding "reputable scientific and medical evidence" calling the State's theory into question.[25] Guzman points to an affidavit from Dr. John Plunkett, a forensic pathologist who opines that E.A.'s head injury was caused by a low-velocity impact as the result of a short-distance fall in the bathtub.[26] The state habeas corpus court found that Dr. Plunkett's affidavit was "not credible and carried no evidentiary value" for a number of reasons,[27] based on "undisputed facts" showing that:

> (a) Dr. Plunkett never personally examined the complainant unlike the complainant's treating physicians, Dr. Helen Mintz-Hittner and Dr. Len Tanaka; (b) Dr. Plunkett's affidavit only generally addressed the complainant's symptoms of subdural and retinal hemorrhaging; and (c) Dr. Plunkett failed to address the types and locations of the retinal hemorrhages which indicated multiple, forceful back-and-forth shaking motions [as reflected in Dr. Mintz-Hittner's affidavit] as well as (i) the substantial, unexplained "fresh" bruising throughout the complainant's body and (ii) bruising to the deep central parts of the complainant's brain [thalami and basal ganglia] which

---

[24]Id. at 96, 100, 106-07, 118-19, 127-31.

[25]Petition, Docket Entry No. 1, pp. 14-15.

[26]Affidavit of John Plunkett, M.D., Exhibit E to Petitioner's Opposition, Docket Entry No. 22-2, p. 23.

[27]Supplemental Findings and Conclusions, Exhibit F to Respondent's MSJ, Docket Entry No. 12-7, p. 11.

> required substantial traumatic force to reach these deep,
> central brain areas [as reflected in Dr. Tanaka's
> affidavit].[28]

Guzman does not present any evidence to rebut the state habeas corpus court's credibility determination or any of its fact findings, which are presumed correct, and he does not otherwise show that these findings are based on an unreasonable interpretation of the record. See 28 U.S.C. §§ 2254(d)(2), 2254(e)(1).

More importantly, Guzman cites no authority in support of his claim that the prosecutor engaged in misconduct during her presentation of the State's case.[29] A prosecutor may not knowingly suborn perjury, present false evidence, or allow false testimony to go uncorrected at trial, see Giglio v. United States, 92 S. Ct. 763, 765-66 (1972), and Napue v. People of the State of Illinois, 79 S. Ct. 1173, 1177 (1959). But a prosecutor is not required to present evidence in support of the defense's case, as Guzman appears to suggest. Because Guzman has not shown that the state court's decision to reject this claim was contrary to or an unreasonable application of clearly established Supreme Court precedent, he is not entitled to relief on this claim. See 28 U.S.C. § 2254(d)(1).

---

[28]Id. at 12.

[29]Petition, Docket Entry No. 1, pp. 11, 14-15; Petitioner's Opposition, Docket Entry No. 22, pp. 19-25.

## C. Ineffective Assistance of Counsel

On state habeas corpus review Guzman claimed that his defense counsel (Gerardo Harry Gonzales) was ineffective for failing to adequately investigate or hire a defense expert to contest the State's theory of Shaken Baby Syndrome by presenting evidence that E.A.'s injuries could have been caused by a fall.[30] Guzman also claimed that defense counsel was ineffective for failing to present evidence showing that his son Daniel was physically aggressive and could have caused E.A.'s injuries.[31] These claims were rejected by the state habeas court, which made detailed findings of fact following an evidentiary hearing on these issues.[32] For the first time on federal review Guzman also claims that his defense counsel was ineffective for failing to consult with him or members of his family and for failing to interview witnesses.[33]

Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Id. at

---

[30]State Habeas Application, Exhibit A to Respondent's MSJ, Docket Entry No. 12-2, pp. 8-9.

[31]Id. at 9-10.

[32]Supplemental Findings and Conclusions, Exhibit F to Respondent's MSJ, Docket Entry No. 12-7, pp. 5-13.

[33]Petition, Docket Entry No. 1, pp. 6, 9-10.

2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Hoffman v. Cain, 752 F.3d 430, 440 (5th Cir. 2014) (quoting Strickland, 104 S. Ct. at 2064). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 104 S. Ct. at 2065).

To satisfy the prejudice prong "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A habeas petitioner must "affirmatively prove prejudice." Id. at 693. A petitioner cannot satisfy the second prong of Strickland with mere speculation and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009); see also Lincecum v. Collins, 958 F.2d 1271, 1279-80 (5th Cir. 1992) (stating that an ineffectiveness claim based on speculation or conclusional rhetoric will not warrant relief).

A petitioner claiming ineffective assistance of counsel faces a high bar on federal habeas review. To the extent that his ineffective-assistance claims were rejected by the state court, the issue is not whether "'the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (citation omitted). In addition, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. Id. at 1413; see also Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); Beatty v. Stephens, 759 F.3d 455, 463 (5th Cir. 2014) (same). None of Guzman's allegations of ineffective assistance, which are discussed separately below, are sufficient to warrant relief under this standard.

1.  Failure to Investigate or Hire a Defense Expert

In two related grounds Guzman contends that his defense counsel was deficient for failing to investigate whether E.A.'s injuries could have been caused by other means, such as a fall in

the bathtub as the result of an epileptic seizure or a fall down the stairs.[34] Guzman argues further that his counsel should have hired a medical expert to present evidence of this theory and to counter testimony from the State's expert witnesses, who diagnosed E.A. with Shaken Baby Syndrome.[35] In support, Guzman points to the affidavit from Dr. Plunkett and his theory that E.A.'s injuries could have been sustained by a low-velocity impact as the result of falling in the bathtub.[36]

In his affidavit to the state habeas corpus court defense counsel stated that he did not conduct any investigation to determine whether the injuries were caused by an accidental fall because it was evident that the injuries were caused "by someone shaking the baby violently."[37] Counsel elaborated during the state court evidentiary hearing that he did not pursue additional investigation or hire a medical expert because, based on information provided to him by Guzman, he elected to pursue a defense at trial showing that Guzman was not present when E.A. was hurt and did not know how she sustained the injuries.[38] Part of

---

[34]Petition, Docket Entry No. 1, p. 9.

[35]Id.

[36]Petitioner's Opposition, Docket Entry No. 22, pp. 27-28.

[37]Affidavit from Gerardo Harry Gonzales, Exhibit D to Respondent's MSJ, Docket Entry No. 12-5, pp. 2-3.

[38]Court Reporter's Record of Writ Hearing, vol. 2, Docket Entry No. 16-16, p. 24; Court Reporter's Record of Writ Hearing, vol. 3, Docket Entry No. 16-17, pp. 40-41; Court Reporter's Record of Writ Hearing, vol. 4, Docket Entry No. 16-18, pp. 14-17.

this strategy was to discredit Susan Bravo with prior inconsistent statements to CPS and to indirectly suggest that another party, such as Bravo or Guzman's son, Daniel, could have caused the injuries.[39]  Defense counsel explained that he saw no reason to investigate E.A.'s history of epilepsy because it did not fit with Guzman's chosen defensive strategy.[40]

When confronted with Dr. Plunkett's affidavit, which concluded that E.A.'s injuries could have been caused by a low-velocity impact as the result of a short-distance fall, defense counsel stated that he did not believe it would have made a difference if he had presented this evidence at trial.[41]  The state habeas corpus court agreed, finding that Dr. Plunkett's affidavit was not credible and lacked evidentiary value for reasons set forth above.[42] The state habeas corpus court also concluded that, if Dr. Plunkett had testified, it was "not reasonably probable that the jury would have rejected the expert opinions of Dr. Mintz-Hittner and Dr. Tanaka and accepted Dr. Plunkett's expert opinion in order to acquit [Guzman]."[43]  The state habeas corpus court concluded,

---

[39]Court Reporter's Record of Writ Hearing, vol. 5, Docket Entry No. 16-19, pp. 73, 86-87, 89.

[40]Id. at 126-27.

[41]Id. at 95.

[42]Supplemental Findings and Conclusions, Exhibit F to Respondent's MSJ, Docket Entry No. 12-7, p. 11.

[43]Id. at 12.

therefore, that defense counsel was not objectively deficient for failing to investigate or present evidence from Dr. Plunkett that E.A.'s injuries were the result of an accidental fall, nor was he prejudiced by the purportedly deficient conduct.[44]

Guzman offers nothing to rebut the presumption of correctness that attaches to the trial court's fact findings or credibility determinations, which were made after an evidentiary hearing on his ineffective-assistance claims. See Pippin, 434 F.3d at 792. Guzman does not allege facts showing that his counsel's failure to hire an expert or his chosen trial strategy was unreasonable. "[A] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011) (citation and internal quotation marks omitted). Considering the detailed testimony by the State's experts and the severe nature of E.A.'s injuries, Guzman also fails to show that the result would have been different if he had presented the proposed testimony from Dr. Plunkett or if he had pursued another strategy at trial. Based on this record Guzman fails to show that the state court's decision to deny relief on this claim was unreasonable. Therefore, the respondent is entitled to summary judgment on these claims.

---

[44]Id.

2. Failure to Present Evidence

Guzman claims that his defense counsel was deficient because he failed to present evidence of an alternative suspect, namely, Guzman's son Daniel.[45] In particular, Guzman refers to letters from Daniel's elementary school teachers about his aggressive behavior with other children.[46]

Defense counsel testified during the evidentiary hearing that at Guzman's request he explored the possibility that E.A.'s injuries were caused by Susan Bravo or by his son, Daniel.[47] Defense counsel acknowledged that Guzman gave him some letters from Daniel's elementary school showing that Daniel slapped or hit other students on at least three occasions and that he acted out physically.[48] As a result defense counsel considered whether Daniel could have caused E.A.'s injuries,[49] and pursued a defensive theory suggesting that Daniel could have been an alternative suspect.[50]

The record reflects that defense counsel established through cross-examination of Susan Bravo that Daniel acted out in

---

[45]Petition, Docket Entry No. 1, p. 9.

[46]Id. at 9-10.

[47]Court Reporter's Record of Writ Hearing, vol. 2, Docket Entry No. 16-16, p. 25; Court Reporter's Record of Writ Hearing, vol. 3, Docket Entry No. 16-17, pp. 62-66.

[48]Court Reporter's Record of Writ Hearing, vol. 4, Docket Entry No. 16-18, pp. 8-11.

[49]Id. at 10-11.

[50]Court Reporter's Record of Writ Hearing, vol. 5, Docket Entry No. 16-19, pp. 73, 85-89.

aggressive ways and was alone with E.A. on the morning she was taken to the hospital.[51] He presented testimony from a defense witness who worked as Guzman's nanny (Maria Camarillo) that Daniel was physically aggressive and that she saw Daniel hit and push the other children in the household, including E.A.[52] Guzman also testified on his own behalf that Daniel was "hyper" and that he was "sometimes" aggressive toward Susan Bravo's children.[53]

At the evidentiary hearing defense counsel conceded that he had subpoenaed teachers from Daniel's elementary school and Daniel's pediatrician (Dr. Hanby), but that he did not call them as witnesses.[54] Defense counsel explained that he did not want Guzman to blame Daniel during trial because he thought it would make Guzman look like a "jerk" for blaming his own son.[55] The record reflects that defense counsel's instincts were accurate and that the evidence about Daniel's aggressive nature proved to be double-edged. The jury heard evidence that Daniel was only four years old when E.A. was severely injured in February of 2005.[56] At 38 pounds,

---

[51]Court Reporter's Record of Trial, vol. 4, Docket Entry No. 13-14, pp. 62-63, 65, 68, 73.

[52]Court Reporter's Record of Trial, vol. 5, Docket Entry No. 13-15, pp. 71-73.

[53]Id. at 97, 105.

[54]Court Reporter's Record of Writ Hearing, vol. 5, Docket Entry No. 16-19, pp. 118-19, 140-42.

[55]Court Reporter's Record of Writ Hearing, vol. 5, Docket Entry No. 16-19, p. 89.

[56]Court Reporter's Record of Trial, vol. 5, Docket Entry No. 13-15, p. 78.

he outweighed E.A. by only 10 pounds,[57] meaning that he could not have lifted or violently shaken her. The prosecutor ridiculed Guzman on cross-examination and during her summation for attempting to create a "rabbit trail" by implicating his four-year-old son in a shameless effort to deflect blame away from himself.[58]

Because evidence about Daniel's aggressive behavior was already before the jury, Guzman fails to show that defense counsel's strategic decision not to present more of the same was deficient. Defense counsel is not deficient for failing to present evidence that is duplicative or double-edged. See Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999). Likewise, Guzman has not demonstrated that the outcome of his trial would have been any different if his defense counsel had presented additional evidence of his son's aggressive nature. Based on this record Guzman's allegations are insufficient to overcome the presumption that counsel's decision not to present the additional evidence was sound trial strategy. See Strickland, 104 S. Ct. at 2065. Guzman does not otherwise demonstrate that the state habeas corpus court's decision to deny relief on this claim was objectively unreasonable. Therefore, the respondent is entitled to summary judgment on this claim.

---

[57]Id. at 125.

[58]Id. at 125-26, 150.

3. <u>Guzman's Remaining Ineffective-Assistance Claims are Procedurally Barred and, Alternatively, Without Merit</u>

Although Guzman raised several allegations of ineffective assistance on state habeas review, the record reflects that he did not include a claim that his counsel failed to confer with him or his family and he did not include a claim that counsel failed to interview witnesses.[59] As a result, the respondent argues that these claims are unexhausted.[60] <u>See</u> 28 U.S.C. § 2254(b)(1) (requiring a petitioner to exhaust all "remedies available" in state court before seeking federal habeas review); <u>see also</u> <u>Jones v. Jones</u>, 163 F.3d 285, 296-98 (5th Cir. 1998) (holding that where a petitioner lodges multiple claims for ineffective assistance of counsel each distinct allegation of ineffective assistance must be exhausted). By failing to exhaust state court remedies when he had an opportunity to do so, the respondent argues further that these claims are barred by the doctrine of procedural default.[61]

Guzman could have, but did not, present his unexhausted ieffective-assistance claims on state habeas corpus review. Because a successive state habeas corpus application would be barred by the Texas abuse-of-the-writ statute, <u>see</u> TEX. CODE CRIM. PROC. art. 11.07, § 4(a), this default represents an adequate state

---

[59]State Habeas Application, Exhibit A to Respondent's MSJ, Docket Entry No. 12-2, pp. 8-10.

[60]Respondent's MSJ, Docket Entry No. 12, pp. 11-12.

[61]<u>Id.</u> at 13-14.

procedural ground that bars federal review of Guzman's unexhausted ineffective-assistance claims unless an exception applies. See Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citing Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995)); see also Neville v. Dretke, 423 F.3d 474, 480 (5th Cir. 2005) (concluding that unexhausted claims, which could no longer be raised in state court due to Texas' prohibition on successive writs, were procedurally defaulted).

Where a petitioner has committed a procedural default, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991). Guzman has not offered any explanation or cause for his default. Guzman likewise fails to establish prejudice or show that his default will result in a fundamental miscarriage of justice because he has not provided evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986); see also Schlup v. Delo, 115 S. Ct. 851, 861 (1995) (describing actual innocence as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits") (citation omitted). The court concludes, therefore, that Guzman's unexhausted claims concerning his counsel's alleged failure to confer with him or his family and his failure to

interview witnesses are barred by the doctrine of procedural default. The respondent is entitled to summary judgment on these claims.

Alternatively, Guzman's unexhausted allegations of ineffectiveness are insufficient to state a valid claim for relief. Defense counsel testified at the state evidentiary hearing that he consulted with Guzman during the preparation of his defense, that he discouraged Guzman from testifying, and that he also consulted with members of Guzman's family.[62] Guzman's mother and brother testified as defense witnesses at the trial.[63] Guzman does not identify any other witnesses that defense counsel could have interviewed and he does not allege facts showing that additional consultation with him or his family members would have changed the outcome.[64] His conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice. See Day, 566 F.3d at 540-41; see also Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) ("'This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.'") (citing Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000)). For this

_____

[62]See Court Reporter's Record of Writ Hearing, vol. 5, Docket Entry No. 16-19, pp. 103-05, 125-26.

[63]Id. at 80-88.

[64]Petition, Docket Entry No. 1, pp. 6, 9-10.

additional reason, Guzman is not entitled to relief on his unexhausted ineffective-assistance claims.

## D.   Due Process on Direct Appeal

Finally, Guzman contends that he was denied due process when the state court of appeals used "flawed" reasoning to reject his challenge to the factual sufficiency of the evidence.[65]   Guzman argues that the State's evidence of Shaken Baby Syndrome was "too weak" to support the jury's verdict.[66]   Guzman raised similar arguments in his petition for discretionary review, which was summarily rejected by the Texas Court of Criminal Appeals.[67]

Because Guzman challenges the factual sufficiency of the evidence, his claim concerns issues of state law that are not actionable on federal habeas review.   See Woods v. Cockrell, 307 F.3d 353, 358 (5th Cir. 2002).   A federal habeas corpus court does not sit as a "super state supreme court" to review issues decided by state courts on state law grounds.   See Montgomery v. Cockrell, 32 F. App'x 126, 2002 WL 334631, at *2 (5th Cir. 2002); Porter v. Estelle, 709 F.2d 944, 957 (5th Cir. 1983); Martin v. Wainwright, 428 F.2d 356, 357 (5th Cir. 1970).   A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a

---

[65]Id. at 11, 12-13.

[66]Id. at 13.

[67]Appellant's Petition for Discretionary Review, Docket Entry No. 13-8, pp. 1-18.

constitutional violation infected the petitioner's state trial. See Estelle v. McGuire, 112 S. Ct. 475, 480 (1991); Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993).

Because Guzman's challenge to the factual sufficiency of the evidence does not implicate a constitutional violation, it does not afford a basis for relief on federal habeas review.[68] Accordingly, the respondent is entitled to summary judgment on this claim.

Because Guzman has failed to establish any valid claim for relief, Respondent's Motion for Summary Judgment will be granted and Petitioner's Motion in Opposition will be denied.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional

---

[68]On habeas corpus review of a state court conviction, a challenge to the sufficiency of the evidence is governed by Jackson v. Virginia, 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. See In re Winship, 90 S. Ct. 1068, 1073 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 99 S. Ct. at 2789 (emphasis in original). Guzman did not challenge the legal sufficiency of the evidence in state court, and he does not attempt to do so on federal habeas review. Therefore, the court does not consider this issue further.

right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2565 (2004) (quoting <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" <u>Miller-El v. Cockrell</u>, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, <u>sua sponte</u>, without requiring further briefing or argument. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. Conclusion and Order

The court **ORDERS** as follows:

1.  Respondent's Motion for Summary Judgment (Docket Entry No. 12) is **GRANTED** and Petitioner's Motion in Opposition to Summary Judgment (Docket Entry No. 22) is **DENIED**.

2.  Bartholomew Antonio Guzman's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 14th day of February, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE